Eocco Pa bella, J.
The plaintiff James Burrough, Ltd., is an English corporation which for over 100 years has distilled and marketed a gin under the trade name “ Beefeater ”, which is sold in many countries and has been imported into the United States in substantial quantities since 1946. The name “ Beefeater ” was registered by the said plaintiff in Great Britain in 1909 and in the United States in 1933. It has also been registered in 37 countries, and registration now is pending in 6 additional countries. It is printed on the labels of the bottles in which the gin is sold and upon the cartons in which the bottles are packed.
The plaintiff Kobrand Corporation, a New York corporation, is the American distributor and sells Beefeater gin to retail package liquor stores as well as to restaurants, .cafes and bars. There are over 25,000 such purchasers throughout the United States.
Kobrand Corporation and its distributors have expended within the United States since 1946 large sums of money in advertising and promoting the sale of Beefeater gin, which is extensively advertised in leading magazines having nationwide circulation and in many newspapers throughout the country as well as on theatre programs. During the period between 1953 and April, 1957, Beefeater gin was sold in this country of a wholesale value of over $7,800,000. In 1956 alone the sale of *821 Beefeater gin at wholesale amounted to nearly $4,000,000, and in the first four months of 1957 to more than $1,500,000. In the State of New York, Beefeater gin of a wholesale value of over $890,000 was sold during the year 1956, and during the first four months of 1957 such sales in this State amounted to almost $310,000. Within the greater city of New York and the nearby counties of Nassau, Suffolk and Westchester the wholesale value of Beefeater gin sold in 1956 was more than $640,000, and during the first four months of 1957 it was more than $220,000. In the metropolitan area of New York, approximately 620 restaurants, 110 clubs, 75 hotels and over 900 retail liquor stores are current purchasers of Beefeater gin.
The evidence abundantly established that the word Beefeater has definitely acquired a special or secondary meaning, and is identified in the public mind with plaintiff’s product. It is useless to discuss the historical origin of the word and its divers meanings. It is, of course, a familiar fact that for centuries the term Beefeater has been applied to yeomen of the guard stationed at the Tower of London.
The corporate defendant was organized in the State of New York in January of 1957 under the corporate name of The Beefeater, Inc. The primary purpose of the defendant’s business is to operate a restaurant selling food and liquor. Among the purposes included in its certificate of incorporation are the purchase and sale at retail of all kinds of alcoholic liquor. Before the defendants’ restaurant was opened, at 141 East 45th Street in the city of New York, where it now is located, and before the defendants had expended any substantial sums of money in advertising its name or in erecting signs, the plaintiffs’ attorneys wrote to the defendants objecting to the use by them of the Beefeater name. This protest was disregarded.
I am of the opinion that the use by the defendants of the name Beefeater would enable them, however unblameworthy their motive, to enjoy the benefits of plaintiffs’ extensive advertising, and of the large expenditures of money by the plaintiffs over many years. Plaintiffs’ labors and the money they spent have certainly given to the word Beefeater a secondary meaning of great monetary value. I also believe that this case is well within the ambit of subdivision 3 of section 368-c of the General Business Law, which reads as follows: “ Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the *822 source of goods or services ”. Moreover, as the defendants purvey food and liquor, the relationship between their business and that of the plaintiffs is such that, if they be allowed to use the name Beefeater, people will naturally infer an association or connection of some sort between Beefeater gin and the defendants’ restaurant. It is reasonable to suppose that their confidence in the quality of Beefeater gin would induce people to patronize the Beefeater restaurant.
The word beefeater is not now in common usage. For example, it is not an antonym of the word vegeteriam. It would sound strange and forced if it were to be applied to a human being or even to an animal (though apparently the buffalo bird is sometimes called beefeater, a fact not known to many patrons of restaurants or imbibers of gin). It is not used in common speech to describe a person who prefers beef to pork or lamb or eggs or vegetables, although defendants’ expert witness sought to give it that meaning. One does not speak of a water-drinker or breadeater or fisheater or beefeater, as this witness, whose testimony I do not accept, suggested. This is not modern English usage, certainly not American or New York usage.
The said anti-dilution statute (General Business Law, § 368-c, subd. 3) entitles the plaintiffs to protection. Apart from the statute, there is here also a species of unfair competition. Inns, taverns, saloons and restaurants conduct business of a sort which is not unrelated to that of a manufacturer and seller of alcoholic beverages. Also, as Mr. Justice Steuer remarked in granting a temporary injunction in this case (6 Mise 2d 692, 693-694) t “ Plaintiff’s product has one of its more important outlets to the public through restaurants. It is true that defendant’s type of restaurant does not feature potables but it admits that it sells liquors to its patrons. Association and identification in the public mind is more than a mere possibility. In a community more than usually name conscious the incidences of such an unusual and striking appellation are almost certain to arouse conjecture and then assumption of identity. It is not to be disputed that plaintiff is not required to put its reputation in defendant’s hands, no matter how capable those hands may be.”
That the plaintiffs have licensed a few eating places to use the Beefeater name is nothing from which these defendants can take any advantage. The plaintiffs are free to place their valuable property right represented by that name in the keeping of persons of their own choice. The individual defendant and his corporation are not among those thus selected by the plaintiffs, .
*823 There will be judgment here in favor of the plaintiffs and against the defendants.
The defendants, their agents, servants and employees are enjoined from operating under the name “ The Beefeater ” or under any similar name. In ■ this connection, it is noted that during the pendency of the action and notwithstanding the subsistence of a temporary injunction the defendants have called their restaurant “The Beefer ”. I do not consider this a similar name. Accordingly, they may if they wish continue to use it, although it is hard to see why any proprietor of an eating and drinking place should be willing to give it a name so unappetizing and having such unpleasant connotations. If the defendants are really serious about continuing to call their place of business “ The Beefer ” they will not use a type or style of lettering or symbols or devices resembling those used by the plaintiffs.
As a temporary injunction was granted at the outset and as it is apparent that the plaintiffs have thus far not sustained any substantial damages, the defendants will not be required to account for profits, and no monetary damages will be awarded to the plaintiffs.
The foregoing represents the decision of the court in accordance with section 440 of the Civil Practice Act.
Settle judgment on notice.
The plaintiffs will have taxable costs and disbursements.
Ninety days to make a case.