**JAMES BURROUGH LTD., and Kobrand Corporation, Plaintiffs,**

v.

**William LESHER, d/b/a Beefeater's and Doubl L Washington, Inc., Defendants.**

Civ. A. No. IP 57-C-163.

United States District Court
S. D. Indiana,
Indianapolis Division.

July 11, 1969.

Lauterstein & Lauterstein, New York City, and V. A. Trask and J. W. Hanley, of Trask, Jenkins & Hanley, Indianapolis, Ind., for plaintiffs.

James J. Stewart and Terence L. Eads of Stewart, Irwin, Gilliom, Fuller & Meyer, and Harold R. Woodard, of Woodard, Weikart, Emhardt & Naughton, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

STECKLER, Chief Judge.

This cause comes before the court on plaintiffs' motion for summary judgment under Fed.R.Civ.P. 56. The basic question raised by the motion is whether defendants, by operating a restaurant under the names "Beefeaters" and "Beef Eaters," have violated the Lanham Act and infringed registered trademarks under which plaintiffs sell

gin. For the reasons set forth below, and on the basis of the findings of fact and conclusions of law filed herewith, the court has determined that there is here no genuine issue as to any material fact and that plaintiffs are entitled to judgment as a matter of law.

*Parties and Pleadings*

Plaintiff James Burrough Limited (hereinafter Burrough) is an English corporation. It is the distiller of the well known gin, Beefeater, which is sold throughout the world. Beefeater gin is distributed and sold in the United States by Burrough's exclusive distributor, plaintiff Kobrand Corporation, which has its principal place of business in New York City. Plaintiffs' gin is marketed under trademarks [1] comprising the word BEEFEATER and a pictorial representation of one of the uniformed Tower of London guards, sometimes referred to as "Beefeaters."

Defendant Doubl L Washington, Inc., an Indiana corporation, is the owner of a large restaurant and cocktail lounge located at 6501 E. Washington Street, Indianapolis, Indiana on U. S. Highway 40. Defendant Lesher is president of the corporation, one of its two stockholders, and in active charge of its operations.

Although plaintiffs' verified complaint, filed April 6, 1967, contained both a count alleging trademark infringement and a count alleging unfair competition, the second count was later withdrawn. by plaintiffs, and this action thus became one solely for trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq., as amended. In support of the retained count, the complaint asserted ownership of the trademarks above identified, extensive sales and advertising of Beefeater Gin throughout the United States, the acquisition of a secondary meaning for the trademark "Beefeater", and public acceptance of that trademark as an identification of Burrough's Beefeater Gin. The com-

plaint further alleged that defendants, in operating their restaurant under the names "Beefeaters" and "Beef Eaters", had made extensive and prominent use of Burrough's registered trademarks. It was further asserted that the defendants had thereby appropriated extremely valuable good will created by plaintiffs in the trademarks, and that as a result the public "has been or is likely to be confused, misled, and deceived by defendants conduct into a belief that the defendants have been or are in some way associated, connected with or sponsored by or approved by plaintiffs." The complaint also alleged that in 1966, defendant Lesher was notified of plaintiffs' objection to use of the name "Beefeaters", that notwithstanding this, defendants continued to engage in business under plaintiffs' trademarks, and that defendants' conduct, in so appropriating plaintiffs' marks, was wilful. The complaint prayed for an injunction, recovery of plaintiffs' damages and defendants' profits, attorneys fees, and such further relief as is just and proper.

After the court had denied defendants' motion for a more definite statement and motion to strike, defendants filed their answer on July 3, 1967. The answer denied the material allegations of the complaint and further stated as affirmative defenses that plaintiffs' trademark was "not an original creation" but is "historical and traditional"; that any secondary meaning of the mark "was limited to its use with gin products"; that the defendants were "not in direct or related competition with the plaintiff"; and that plaintiffs by bringing this action and others like it "have a design intended to force capitulation and monopolization of a limited alleged trademark or trade name by economic coercion."

*Proceedings after Issued Joined*

Following the filing of the answer, plaintiffs took the deposition of defendant Lesher on October 6, 1967. The de-

---

1. Burrough has registered trademarks in the United States Patent Office under Nos. 308,053,. 678,608 and 678,610.

fendants then filed extensive interrogatories directed to Burrough, and Burrough's answers thereto were filed on February 15, 1968. Subsequently, on June 5, 1968 plaintiffs filed their motion for summary judgment, which was accompanied by affidavits and exhibits. Affidavits by Alan Burrough, Deputy Chairman of plaintiff Burrough, by R. C. Kopf, Chairman of the Board of plaintiff Kobrand, and by Harry L. Hicks, president of the advertising agency responsible for the advertising of Beefeater gin, testified to the high quality of Beefeater gin, to use of the Beefeater trademark for more than a century, and to the extent of the distribution, advertising and sales of plaintiffs' Beefeater gin. Also accompanying the motion were color photographs of defendants' restaurant, verified by the affidavit of Jack W. Hanley, plaintiff's attorney, showing defendants' use of the Burrough trademarks. The motion was based on the facts shown by the verified complaint, Burrough's answers to defendants' interrogatories, the Lesher deposition and exhibits identified therein, and the affidavits that accompanied the motion. Briefly summarized, the motion sought a summary judgment holding that ownership of the trademarks and registrations thereof was in plaintiff Burrough, that defendants had infringed the trademarks, that plaintiffs are entitled to recover their damages and defendants' profits, and also enjoining defendants from further infringement.

Before responding to plaintiffs' motion, defendants filed a request for a hearing "for the purpose of presenting additional (sic) evidence" in opposition to the summary judgment motion. After defendants' request had been briefed, and after it was made to appear to the court that the proposed "additional evidence" would be oral testimony, the court denied defendants' request on October 17, 1968. In the meantime, the defendants filed their brief in opposition to the summary judgment motion, accompanying it with affidavits testifying to third-party uses of the term "Beefeater" or

the like in connection with products other than alcoholic beverages. Contemporaneously with the denial of defendants' request for leave to present additional evidence, plaintiffs' motion was set for hearing on November 12, 1968. Following the hearing on that date, both parties filed memorandums dealing with points discussed at the hearing, one of defendants' memorandums being accompanied by another affidavit which testified to the publication by the Patent Office of a third-party application to register "Sign of the Beefeater" as a trademark for pepper, seasonings and spices.

On March 20, 1969, the court set a hearing for further oral argument on plaintiffs' motion for summary judgment, and such a hearing was had on May 21, 1969. On that date, and before the hearing, defendants filed a motion for reconsideration of the court's denial of their request to present additional evidence. This motion was accompanied by eight more affidavits, six testifying to additional third-party uses of "Beefeater" or the like in connection with the sale of products other than alcoholic beverages, one dealing with the historical origin and dictionary definitions of the word "beefeater", and one setting forth the results of a poll taken of defendants' customers as to the significance "Beefeater" had for them. Plaintiffs' counsel made no objection to the receipt and consideration of the eight additional affidavits, and they have been considered by the court, along with the other evidence of record, in reaching its decision.

■ The above detailed recital of events in the course of this case to date is set forth to establish that the court has been extremely lenient with defendants in allowing them to present evidence and to be heard on plaintiffs' motion. The court has refused their request to present oral testimony, as no persuasive showing justifying departure from the regular and accepted practice on motions for summary judgment has been made. Further, it appears from defendants' counsel's representations that the proposed oral testimony would merely be

confirmatory of defendants' affidavits with the averments of which plaintiffs have no quarrel.

*The Evidence*

■ The evidence before the court on plaintiffs' motion comprises the verified complaint, answers to defendants' interrogatories, the deposition of defendant Lesher, affidavits and exhibits. There is no conflict between plaintiffs' evidence and defendants', and therefore there is no issue of fact to be resolved.

Plaintiffs' uncontroverted evidence provides ample support for the detailed findings of fact. Such evidence may be briefly summarized here as establishing the facts that the trademarks under which plaintiffs sue have been in use for over a century in connection with the sale of plaintiffs' product, that plaintiffs have spent large sums in advertising that product and the marks, and that the marks are well known in this country as denoting plaintiff Burrough and the product it makes and sells. Further, that evidence establishes that defendants have used the name "Beefeaters" and "Beef Eaters" on roadside signs, in advertising, and otherwise in promoting their business and have also used the figure of the yeoman of the guard appearing in the Burrough trademarks.

The evidence filed by defendants, all of which is likewise uncontroverted, has already been summarized. Supplementing that summary, it is here noted that the evidence as to third-party uses shows that "Beefeater" and variants thereof have been used or merely registered for use on a fabric, on a cooking appliance, two packaged meat products, in hotels to distinguish a particular dining room, in publications in one of its primary meanings, and in restaurant menus as designations for specific plate dinners

or the like.[2] The dictionary or other definitions of "beef eater" or "beef-eater" show merely that the term has been applied to such things and persons as a genus of birds, an insect, a yeoman of the guard, an eater of beef, a fleshy person, and "a well-fed menial."[3] None of the uses in any way suggests a connection between the term and any alcoholic beverage. Defendants' poll evidence shows that to a minor, but still substantial, proportion of those polled the name of defendants' restaurant suggested alcoholic drinks, Beefeater gin, or a connection between that restaurant and the manufacturers or distributors of Beefeater gin.

*Propriety of Summary Judgment*

■ Since there is no conflict in the evidence before the court, the only, and the ultimate, question to be resolved is whether, on that evidence, defendants' acts satisfy the test of infringement laid down in 15 U.S.C. § 1114(1). That is, are those acts such as are "likely to cause confusion, or to cause mistake, or to deceive"?

The question as to likelihood of confusion "is a question of law." *Westward Coach Mfg. Co. v. Ford Motor Co.,* 388 F.2d 627, 632 (7th Cir. 1968). Its resolution requires application of legal standards, evolved in trademark cases, to the particular facts of the particular case at hand, thereby to decide "whether a defendant's use of the contested mark is 'likely to cause confusion * * *.'" *Baker v. Simmons Company,* 307 F.2d 458, 461 (1st Cir. 1962). The court is to determine, from "the 'purchaser's [patron's] state of mind when confronted' by plaintiffs' registered mark and defendant's mark, whether likelihood of confusion exists." *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 612

---

2. Defendants also filed a list purporting to identify a number of third parties operating restaurants under names beginning with the word "beef". This list could not benefit defendants, for it is not supported by an affidavit made on personal knowledge, as required by Rule 56. The list is of interest, however, for its

showing that out of several dozen different restaurant names suggesting the serving of beef only two contained the word "beefeater." Defendants could have advertised their serving of beef without adopting the Burrough marks.

3. Definition "1" in The Oxford English Dictionary (1961).

(7th Cir. 1965). The rule recognized in these and other authorities [4] is that likelihood of confusion is for the "exclusive judgment of the court * * *" Callman, The Law of Unfair Competition, Trademarks and Monopolies (3rd ed. 1969), Vol. 3 § 81.1.

In view of the above, summary judgment is appropriate here if defendants' acts are "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114.

*Likelihood of Confusion*

■ In considering likelihood of confusion, the court must take account of various factors, such as the degree of similarity between the marks in appearance and sound, similarity of the goods or services for which the mark is used, the area and manner of concurrent use, the degree of care likely to be exercised by consumers, the strength of the plaintiffs' mark, evidence of actual confusion and the alleged infringer's intent. Miss Universe, Inc. v. Patricelli, 408 F.2d 506, 509 (2nd Cir. 1969); Restatement, Torts, § 731. While no single factor is necessarily determinative, each is an appropriate matter for consideration in reaching the ultimate determination of whether or not likelihood of confusion under 15 U.S.C.A. § 1114(1) is present.

■ Application to the undisputed facts in this case of the various factors above mentioned shows that confusion is not merely likely but is inevitable. There is substantially complete similarity of names in both sound and appearance. There is similarity in the segments of the markets catered to, for people who buy or drink plaintiffs' gin must eat. Since passage of the Lanham Act, it is no longer necessary to infringe-

ment that the goods or services of the opposing parties be of the same descriptive properties, and the fact that plaintiffs and defendants here are not in direct competition with each other is of no moment. Fleischmann v. Maier and Tisch Hotels, Inc. v. Americana Inn, Inc., *supra*, (314 F.2d at 151 and 350 F. 2d at 613). "(T)he zone of protection which the law extends in this area is far broader and frequently reaches the area of what might be termed noncompeting goods." Baker v. Simmons Company, *supra*, (307 F.2d at 462). The courts have heretofore found a relation which justifies protection against infringement as between plaintiffs' product and restaurants; even restaurants which do not sell alcoholic beverages.[5]

Most persons patronizing defendants' restaurant or buying plaintiffs' product are not of a type noted for the high degree of care that would be necessary to prevent confusion. Defendants' intent, discussed below, is such as to indicate a likelihood of confusion.

Finally, if the other evidence left any doubt as to likelihood of confusion, such doubt is resolved by defendants' own poll evidence. According to that evidence, 37 of 300 polled patrons of defendants' restaurant stated that its name suggested to them "alcoholic beverages or Beefeater Gin" and six polled patrons indicated that the name of the restaurant gave them the impression that it was "associated or connected with, or sponsored or approved by the manufacturers or distributors of Beef Eaters (sic) Gin."

The undisputed facts clearly establish the likelihood of confusion which, under the Lanham Act, constitutes infringement.

---

4. e. g. Beef/Eater Restaurants, Inc. v. James Burrough Ltd., 398 F.2d 637 (5th Cir. 1968); Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 152 (9th Cir. 1963); La Touraine Coffee Co. v. Lorraine Coffee Co. Inc., 157 F.2d 115, 117 (2nd Cir. 1946).

5. See Beef/Eater Restaurants, Inc. v. James Burrough Limited, *supra*; James Burrough Limited v. Ferrara, 8 Misc.2d

819, 169 N.Y.S.2d 93 (Sup.Ct.N.Y.Co. 1957); and James Burrough Limited v. Squire Lounge, Inc. (Sup.Ct.N.Y.Co. 1968) (New York Law Journal 5/3/68 at p. 16). The fact that the restaurants in the Beef/Eaters case did not sell alcoholic beverages is not apparent from the published decisions but is established here by the Lauterstein affidavit accompanying plaintiffs' motion.

*Secondary Meaning*

Whatever primary significance the term "beef eater" may have in other contexts, the uncontroverted evidence here establishes that, as a designation for gin, it has a strong secondary meaning identifying Burrough's Beefeater gin. Plaintiffs' extensive advertising of the mark and the large and growing volume of sales of the product marketed under it strongly indicate the existence of such secondary meaning. Defendants themselves have tacitly admitted the existence of secondary meaning by displaying on their menus a cocktail list containing, as its first item, "Beefeater Martini," as well as by serving no other brand of gin for some six months. Defendant Lesher testified that Beefeater gin is a "call" beverage, i. e. one the customer calls for by brand name. He further testified that defendants' restaurant uses "maybe three times as much Beefeater Gin" as any other gin except the "bar" gin supplied when no particular brand is specified by the customer. In evidence are menus and wine lists of a number of other restaurants in which a "Beefeater Martini" is listed as among the beverages served. More Beefeater Gin is sold in restaurants, hotels, bars, and the like than in retail liquor stores.

■ The secondary significance of a trademark is not limited in application to the precise field in which that significance has been established. It extends to other fields except those "so foreign to the owner's as to *insure* against any identification of the two." Yale Electric Corp. v. Robertson, 26 F. 2d 972 (2nd Cir. 1928, emphasis supplied), quoted in Polaroid Corp. v. Polaroid, Inc., 319 F.2d 830, 835 (7th Cir. 1963) in support of the holding that "proof of competition between the parties is not required."

■■ Defendants' evidence of other registrations and uses of Beefeater and the like do not weaken the secondary significance of that term as involved here. The mere registrations do not prove actual use and do not create substantive rights. G. LeBlanc Corp. v. H. & A. Selmer, Inc., 310 F.2d 449, 456 (7th Cir. 1962). As for the evidence of actual uses, the fact that others may have used or infringed a trademark is "irrelevant to the question of plaintiffs' right to relief * * *." Tisch Hotels *supra*, 350 F.2d, at 614; Metropolitan Life Ins. Co. v. Metropolitan Insurance Co., 277 F.2d 896, 900 (7th Cir. 1960).

It has heretofore been judicially recognized that Beefeater has a secondary significance extending to the restaurant field, and even to restaurants which do not serve alcoholic beverages.[6] Beefeater/Restaurants v. James Burrough, *supra*, where the trial court "[was] legally compelled to conclude that appellees' trademark (Beefeater) had in fact acquired a secondary meaning." (398 F.2d 639). In Burrough v. Ferrara, the court held that the word Beefeater had "definitely acquired a * * * secondary meaning and is identified in the public mind with the plaintiff's product. It is useless to discuss the historical origin of the word and its divers meanings." (115 U.S.P.Q., at p. 290).

On the evidence in this case, the court agrees with the prior decisions referred to above and rejects defendants' contention that their use of "Beefeater" and "Beef Eaters" is use of those terms in some primary meaning rather than use in the secondary meaning which the court regards as established.

*Defendants' Intent*

■ Defendants' intent in adopting and using Beefeaters and Beef Eaters as names for their restaurant and other-

---

6. The fact that the defendants sell liquor is but one element in determining infringement. Persons driving along a busy interstate highway and observing defendants' large Beefeater signs are not likely to inquire whether or not the restaurant serves liquor, although over 11% of the persons polled by defendants did associate the name with plaintiffs' product or an alcoholic beverage. They see a famous trademark and are attracted by the name.

wise has a bearing on plaintiffs' right to an accounting for profits. Fuller Products Co. v. Fuller Brush Co., 299 F.2d 772, 777 (7th Cir. 1962). Intent also bears on likelihood of confusion, as noted above.

The pertinent evidence shows that defendant Lesher knew of plaintiffs' Beefeater gin before defendants' restaurant was remodeled and its name changed from Doubl L Drive-In Restaurant to Beefeaters. While remodeling of the establishment was under way, and while the use of Beefeaters as a name for it was still only in contemplation, Lesher was warned orally by a representative of Kobrand that use of any such name would be objected to. Nevertheless, defendants adopted the name Beefeaters for the establishment, and displayed the name prominently on outdoor signs as well as in advertising and on menus, place mats, napkins, coasters and like items used inside the restaurants. The interior decor of the restaurant, including the large painting practically duplicating the yeoman of the guard appearing in Burrough's trademarks; the prominent use of a red color close to that used on Burrough's bottles and cartons; and the copying in menus and wine lists of Burrough's historical note describing the yeoman of the guard all go well beyond the mere creation of the Old English atmosphere which Mr. Lesher testified he intended.

After the restaurant had been in operation for some months Mr. Lesher was notified in writing of plaintiffs' claim of infringement. Nearly a year later, the name of the restaurant, in some displays, was changed from Beefeaters to Beef Eaters. Mr. Lesher testified on deposition that he regarded Beef Eaters as more descriptive of people who liked beef than was Beefeaters.

The undisputed evidence shows that Mr. Lesher was not unsophisticated in the use of trade names, especially in the restaurant business. The choice of "Beefeaters" rather than the admittedly more descriptive "Beef Eaters", copying of the yeoman of the guard figure and

of the description in plaintiffs' label, the practical identity of names, the patent attempt to pacify plaintiffs by the belated and insignificant change of name, as well as other facts of record bespeak a conscious intent to appropriate and benefit from good will which, through plaintiffs' own efforts, has been built up in the Burrough trademarks.

In his disposition, Mr. Lesher advanced an explanation as to the adoption of Beefeaters as a name for the restaurant. In so doing he did not deny the existence of an intent to trade on the reputation and good will associated with the Burrough marks. His testimony that some persons referred to him as "Mr. Beefeater" after the restaurant, then operating as Doubl L Drive-In Restaurant, began to specialize in roast beef in 1961 does not explain the hiatus between that time and the time, some five years later, when the name was changed to Beefeaters. Neither does it account in any way for the use of the copy of Burroughs historical note or for the adoption of the Old English motif, of the color, or of the yeoman of the guard painting employed in the remodeled restaurant. In any event, his testimony presents no conflict with the conclusion, compellingly pointed to by the other evidence, that an intent to benefit from use of the Burrough marks had an influence in the selection of the name.

It was defendants' duty to select a name far enough away from Beefeater "to avoid all possible confusion." Northam Warren Corp. v. Universal Cosmetic Co., 18 F.2d 774, 775 (7th Cir. 1927). That duty was not fulfilled.

*The Defense of Monopoly*

 There is no merit in the defense that plaintiffs "have a design intended to force capitulation and monopolization * * * by economic coercion." It does appear that plaintiffs have been successful in a number of instances in stopping unauthorized use of the Burrough Beefeater trademark. In view of the strength of the mark and the very substantial good will attaching to it, plaintiffs can

be expected to be, and are entitled to be, aggressive in asserting their rights against others. Any coercion involved, or monopolization effected, is no more than plaintiffs are entitled to exert and effect under the law. Standard Oil Co. v. Humble Oil & Refining Co., 363 F.2d 945, 954 (5th Cir. 1966); Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 293 F.Supp. 892, 918 (D.C.S.D. N.Y. 1968).

*Order*

There being no genuine issue as to any material fact under the issues presented by the pleadings, and the facts of record showing that plaintiffs are entitled to judgment as a matter of law, plaintiffs' motion for summary judgment is granted. The Clerk is directed to enter in favor of plaintiffs and against defendants a judgment enjoining the defendants, and each of them, from further infringement and providing for an accounting to determine the recovery to which plaintiffs are entitled under 15 U.S.C. § 1117.