# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1902

_____

| | |
|---|---|
| Luigino's, Inc. | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Stouffer Corporation, | * |
| | * |
| Appellant. | * |

_____

Submitted: October 23, 1998

Filed: March 15, 1999
_____

Before RICHARD S. ARNOLD, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Stouffer Corporation appeals the district court's[1] grant of summary judgment declaring that Luigino's, Inc.'s use of the mark "Michelina's Lean 'N Tasty" does not infringe or dilute Stouffer's "Lean Cuisine" mark. We affirm.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

## I.

Since 1978, Stouffer has marketed a line of low-fat frozen entrees under the registered trademark "Lean Cuisine." The line has been successful, allowing Lean Cuisine to maintain, in recent years, the highest or second-highest market share in low-fat frozen entrees. Lean Cuisine's primary competitors include Healthy Choice, Weight Watchers, Budget Gourmet Light, and Michelina's Lean 'N Tasty.

In 1995, spurred by the declining demand for its high-fat frozen entrees, marketed simply as "Michelina's," Luigino's decided to introduce a line of low-fat frozen entrees that it told customers "might be compared with Lean Cuisine entrees." For a product name, Luigino's considered "Lean 'N Tasty," "Light 'N Tasty," and "Michelina's Light." Notwithstanding a consultant's report indicating that the name was the customers' least popular choice, Luigino Paulucci, chairman of Luigino's, selected Lean 'N Tasty and consulted outside trademark counsel about registering the name. Counsel opined that Luigino's could register "Michelina's Lean 'N Tasty," but not "Lean 'N Tasty." Luigino's so named its new line of frozen entrees and introduced it in 1996.

Shortly after the line was introduced, Stouffer requested that Luigino's cease using the Michelina's Lean 'N Tasty mark. Luigino's brought this action against Stouffer for a declaratory judgment that its mark did not infringe or dilute the Lean Cuisine trademark. Stouffer counterclaimed, arguing the opposite under the Lanham Act, 15 U.S.C. §§ 1125(a)(1) and 1125(c)(1).

In addition to assessing the similarity between the marks, the district court considered the trade dress of the Lean Cuisine and Michelina's Lean 'N Tasty packages. Lean Cuisine is packaged in white boxes, with "Lean Cuisine" printed in red lower-case lettering across the top of the front panel. In the upper left-hand corner, the word "Stouffer's" appears in white print on a black oval background with

a gold border; this is superimposed on a red diagonal ribbon, which also has a gold border. Michelina's Lean 'N Tasty, on the other hand, comes in white boxes with a blue background that covers the upper portion of the front panel. "Michelina's" appears in black scripted lettering in a white rectangular box at the top center of the front panel, and "Lean 'N Tasty" is printed just below in white capital letters. A photograph of the prepared entree appears on the front of both packages.

The district court also considered the depositions of two marketing experts. John A. Bunge, Luigino's marketing research expert, opined that a pilot survey established neither trademark infringement nor trademark dilution. The survey investigated the likelihood of confusion about the source, origin, or association of Lean 'N Tasty products by requiring respondents to identify which of twenty-two frozen-food products, made by seven different producers, were offered by the same producer. Respondents who thought that none of the products were offered by the same producer were asked if they thought any of the producers were associated in any way. Bunge determined that none of the 106 respondents believed either that Michelina's Lean 'N Tasty and Lean Cuisine were offered by the same producer, or that Michelina's and Stouffer were associated in any way.

By contrast, Jerry Wind, Stouffer's marketing and consumer research expert, declared Bunge's survey biased and invalid. Wind criticized the survey, asserting that it "encourag[ed] a superficially obvious grouping of the commonly branded products," that it utilized an unreliable sample size and verification procedure, and that it garnered unreliable results, since nearly half of the respondents demonstrated their lack of understanding by answering either "no" or "don't know" to the survey questions. Despite these criticisms, however, Wind offered no opinion about the likelihood of confusion or possible association between Lean Cuisine and Michelina's Lean 'N Tasty. Additionally, although Wind advocated conducting a competent survey, Stouffer did not retain either Wind or another expert to do so. With respect to the trademark dilution issue, Wind opined that Michelina's Lean 'N

Tasty diminishes Lean Cuisine's positioning as the only frozen dinner offered under a name that connotes "dietary and tasteful."

The district court also considered the testimony of Janet Weimann, the marketing director for Lean Cuisine since May of 1995. Weimann testified that Lean Cuisine is a successful brand. In 1995 gross sales were $409 million; and, in 1996, the year in which Michelina's Lean 'N Tasty appeared on the market, gross sales for Lean Cuisine were $434 million, an increase that Weimann agreed not only was "on target" but also produced an on-target profit for the year. Weimann further testified that she was unaware of any negative impact by Michelina's Lean 'N Tasty: she stated that she had not received reports of actual confusion between the two products; moreover, neither she nor Stouffer could identify any lost or displaced sales, or lost customers, food brokers, or grocers, attributable to Michelina's Lean 'N Tasty.

## II.

We review the district court's grant of summary judgment de novo. Insty*Bit, Inc. v. Poly-Tech Indus., Inc., 95 F.3d 663, 666 (8th Cir. 1996), cert. denied, 117 S. Ct. 1085 (1997). Summary judgment is properly granted if the nonmoving party fails to establish the existence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when the matter involves disputes of fact that "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing the grant of summary judgment, we view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## A.

The first issue is whether Stouffer has presented sufficient evidence to raise a genuine issue of material fact on its trademark infringement claim. Trademark infringement occurs when the use of a mark is likely to cause confusion about the affiliation, connection, or association of one person with another person. 15 U.S.C. § 1125(a)(1). To determine whether there is a likelihood of confusion, we must consider six factors, none of which alone is dispositive: (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to "pass off" its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase. Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1330 (8th Cir. 1985) (citing SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). Stouffer argues that it has offered evidence demonstrating that five of the six factors weigh in its favor and that this evidence is sufficient to survive summary judgment.

In this case, there is no dispute that the Lean Cuisine mark is strong, that Lean Cuisine and Michelina's Lean 'N Tasty are in direct competition, and that Stouffer has presented no evidence of actual consumer confusion. The parties dispute the similarity of the marks, predatory intent, and the implications of the type of product and conditions of purchase on the likelihood of confusion. We address each of these factors separately.

Stouffer argues that Lean Cuisine and Lean 'N Tasty are confusingly similar because they both mean "dietary but tasty." The use of identical dominant words does not automatically mean that two marks are similar, however. General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987) (determining that Oatmeal Raisin Crisp and Apple Raisin Crisp are not confusingly similar). We must look to the overall impression created by the marks, not merely compare individual features. Id.

We may consider the marks' visual, aural, and definitional attributes and compare the trade dress of the products in determining whether the total effect conveyed by the two marks is confusingly similar. See id. (approving the district court's consideration of these factors).

With the exception of the word "lean," which is generally descriptive of food and not registerable as a trademark, the two marks look and sound different. Webster's Third New International Dictionary (1986) defines "cuisine" as "manner of preparing food" or "style of cooking," and defines "tasty" as "pleasing to the taste" or "savory." Additionally, "cuisine" and "tasty" are not so alike in form, spelling, sound, and meaning that when used on identical goods, an ordinary consumer is likely to be confused or misled as to the difference between them. Cf. Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 926 (10th Cir. 1986) (finding Beer Nuts and Brew Nuts to be confusingly similar because "beer" and "brew" are both one-syllable words beginning with "b," three of four letters of which are identical, and because the word "brew," when used on a package depicting an overflowing beer stein, means "beer"); General Foods Corp. v. Borden, Inc., 191 U.S.P.Q. 674, 680 (N.D. Ill. 1976) (holding County Prize and Country Time to be confusingly similar); H. Sichel Sohne, GmbH v. Michel Monzain Selected Wines, Inc., 202 U.S.P.Q. 62, 65-66 (T.T.A.B. 1979) (finding Blue Nun and Blue Angel confusingly similar); H. Sichel Sohne, GmbH v. John Gross & Co., 204 U.S.P.Q. 257, 260-61 (T.T.A.B. 1979) (finding Blue Nun and Blue Chapel confusingly similar).

The trade dress of the two packages is also visually distinct. The use of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products. See, e.g., Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1566-68 (Fed. Cir. 1994) (applying Eighth Circuit law and finding no likelihood of confusion, in part because of the prominent placement of logos on the front of the products); Henri's Food Prods. Co. v. Kraft, Inc., 717 F.2d 352, 355-56 (7th Cir. 1983) (stating that a prominent house mark may

tend to lessen confusion); General Mills, 824 F.2d at 627 (finding that the use of house marks in a sufficiently prominent manner may enable consumers to distinguish between two products).

Given the additional lack of evidence of actual consumer confusion, Stouffer fails to raise a genuine issue of material fact regarding whether Lean Cuisine and Michelina's Lean 'N Tasty are confusingly similar.

Stouffer argues that Luigino's intentionally adopted a similar mark to trade on Stouffer's goodwill. Stouffer relies on the fact that Luigino Paulucci rejected a consultant's advice that the name "Lean 'N Tasty" was not a wise choice. Stouffer also points to Paulucci's description of Lean 'N Tasty prior to its introduction on the market as low-fat entrees that "might be compared with Lean Cuisine entrees."

Despite the above contentions, Stouffer has presented no evidence that Paulucci wished to capitalize on Lean Cuisine's strong trademark. Paulucci explained that he chose the name "Lean 'N Tasty" for many reasons: because use of the word "light" would require compliance with too many regulations; because he thought the word "low-fat" was overused; and because he did not agree with the consultant that the word "lean" is associated only with meat. Moreover, Paulucci's reference to the comparable Lean Cuisine entrees evidences only an intent to compete with Lean Cuisine, and not an intent to infringe Stouffer's trademark. "Knowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent by a new entrant to a market to mislead and to cause consumer confusion." General Mills, 824 F.2d at 627. Therefore, Stouffer has failed to raise a genuine issue of material fact regarding predatory intent.

Stouffer also argues that the conditions of purchase increase the likelihood of consumer confusion. In considering this factor, we must stand "in the shoes of 'the ordinary purchaser, buying under the normally prevalent conditions of the market and

giving the attention such purchasers usually give in buying that class of goods.'" Id. (quoting Scott v. Mego Int'l, Inc., 519 F. Supp. 1118, 1133 n.17 (D. Minn. 1981)). Stouffer has not presented evidence that the conditions of purchase increase the likelihood of confusion; in fact, the record indicates the contrary. Janet Weimann, marketing director of Lean Cuisine, testified that consumers purchase "healthy" products quickly, but not impulsively or carelessly. The Trademark Trial and Appeal Board made similar statements in another case involving Lean Cuisine, stating that "diet-conscious purchasers of these prepared entrees are a special class of purchasers who may be expected, at least, to examine the front of the packages in order to determine what kind of entree is contained therein and its caloric content." Stouffer Corp. v. Health Valley Natural Foods, Inc., 1 U.S.P.Q.2d 1900, 1902 (T.T.A.B. 1987), aff'd, 831 F.2d 306 (Fed. Cir. 1987).

Additionally, both parties display their low-fat products in the same freezer section as their regular products. A former marketing manager for Lean Cuisine testified that manufacturers use this strategy to create the largest possible display sections and to encourage consumers to purchase their regular and low-fat brands. See Dep. of Joanne Saxer at 63-65, Appellee's Appx. at 11-13. These marketing techniques, combined with the trade dress distinctions discussed above, enable consumers to find each party's respective products together and to distinguish between the products. Stouffer has not presented any evidence of actual confusion to the contrary. Accordingly, we determine that Stouffer has failed to raise a genuine issue of material fact with respect to whether the conditions of purchase create a likelihood of consumer confusion.

Stouffer's evidence shows only that Lean Cuisine and Michelina's Lean 'N Tasty compete and that Lean Cuisine remains the market leader of low-fat frozen entrees. No reasonable factfinder could conclude that there is a likelihood of confusion between the two products. Accordingly, we affirm the summary judgment on Stouffer's trademark infringement claim.

**B.**

We must also determine whether Stouffer has presented sufficient evidence to raise a genuine issue of material fact on its claim for trademark dilution by blurring. Dilution is separate and distinct from trademark infringement. Infringement depends on a likelihood of consumer confusion over the source of a product, while dilution by blurring concerns "the lessening of the capacity of a famous mark to identify and distinguish goods or services." 15 U.S.C. § 1127; see also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:70, at 24-117-121 (4th ed. 1998) (stating that the dilution doctrine provides trademark protection beyond the "likelihood of confusion" test).

Dilution occurs when consumers associate a famous mark that has traditionally identified the mark holder's goods with a new and different source. McCarthy, supra, at 24-117-118. For example, the doctrine would "protect the owner of a mark for automobiles and airplanes from the use by another of a very similar mark for radio tubes." Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549, 553 (1st Cir. 1948) (citing Wall v. Rolls-Royce of America, Inc., 4 F.2d 333, 334 (3d Cir. 1925)). By causing consumers to connect the famous mark with different products, the subsequent mark weakens, or dilutes, the famous mark's unique and distinctive link to a particular product. McCarthy, supra, at 24-118; Restatement (Third) of Unfair Competition § 25 cmt. f (1995).

To establish a claim for trademark dilution by blurring, Stouffer must show that its Lean Cuisine mark is famous, that Luigino's began using a similar or identical mark after the Lean Cuisine mark became famous, and that Luigino's mark dilutes the distinctive quality of the Lean Cuisine mark by causing consumers to connect the Lean Cuisine mark with different products. See 15 U.S.C. § 1125(c)(1); McCarthy, supra, at 24-119. Because Luigino's concedes that Lean Cuisine is a famous mark

and that it began using the Michelina's Lean 'N Tasty mark after Lean Cuisine was famous, we turn to the issues of similarity and dilution.

To support an action for dilution by blurring, "the marks must at least be similar enough that a significant segment of the target group of customers sees the two marks as essentially the same." McCarthy, supra, § 24:90.1, at 24-145. See also Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1029 (2d Cir. 1989) (holding that marks had to be "very" or "substantially" similar to support a claim of dilution, and finding that "Lexis" and "Lexus" were not substantially similar). As noted in our trademark infringement discussion, common use of the descriptive word "lean" does not make the marks similar. "Cuisine" does not mean "tasty," as Stouffer would have us conclude. Moreover, the sight and sound of the marks are different. Accordingly, Stouffer has not raised a genuine issue for trial on whether the marks are similar.

Nor has Stouffer shown dilution. Dilution occurs when consumers associate a famous mark with a new product. Normally, the doctrine applies in cases where "similar marks are used on dissimilar goods." Pro-phy-lac-tic Brush, 165 F.2d at 553. That is not the case here because Stouffer and Luigino's are both marketing low-fat frozen entrees. Furthermore, Stouffer's dilution argument is based on the notion that consumers associate both Lean Cuisine and Lean 'N Tasty with tasty, low-fat frozen entrees. Trademark law does not give Stouffer the exclusive right to use a mark that consumers associate with tasty, low-fat frozen entrees, however. To succeed on its claim, Stouffer was required to offer evidence that the "Michelina's Lean 'N Tasty" mark causes consumers to associate the "Lean Cuisine" mark with something other than Stouffer's frozen entrees. Because Stouffer did not do this, its trademark dilution claim must fail.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.